IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | **8:13CR62** |
| v. | | |
| ADAM BECK, | | **MEMORANDUM AND ORDER** |
| Defendant. | | |

This matter is before the court on the defendant's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, Filing No. 55. This is Beck's first § 2255 motion. The court held a hearing on the motion on June 22, 2016.

I.     BACKGROUND

Pursuant to a binding plea agreement under Fed. R. Crim. P. 11(c)(1)(C),[1] Beck entered a plea of guilty to a charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) and was sentenced to a term of imprisonment of 110 months, followed by a term of supervised release of three years. Filing No. 43, Plea Agreement. Filing No. 43, Plea Agreement; Filing No. 52, Judgment. The plea agreement also resolved a charge for a violation of supervised release in Case No. 8:07CR165, in that the parties agreed that the defendant would be sentenced to 6 concurrent months of imprisonment for that charge. Filing No. 43, Plea Agreement at 8. The plea agreement also provided that the parties had no agreement regarding the applicable Guidelines, but that, if the defendant were determined to be a career offender under U.S.S.G. § 4B1.1, the applicable offense level shall be determined pursuant to

---

[1] See Fed. R. Crim. P. 11(c)(1)(C) (providing that government may agree to specific sentence or sentencing range and that agreed-upon sentence or range binds court once it accepts plea agreement).

U.S.S.G. § 4B1.1(b) and the defendant would be criminal history category VI.  *Id.* at 6. The court accepted the defendant's plea, but did not approve the plea agreement pending the preparation of a Presentence Investigation Report ("PSR") by the Probation Office.  Filing No. 40, text minute entry.

The record shows that, in the PSR, the Probation Office calculated the defendant's base offense level to be 24 under U.S.S.G. § 2K2.1(a)(2) for committing the offense subsequent to sustaining two felony convictions:  one for drug distribution and one for a crime of violence, that is, burglary.  Filing No. 50, PSR (sealed) at 7, 9.  The base offense level was adjusted upward by two levels for an offense involving three or more firearms under U.S.S.G. § 2K2.1(b)(1)(A), and by two levels for possession of a stolen firearm under U.S.S.G. § 2K2.1(b)(4)(A), for an adjusted offense level of 28.  *Id.* at 8.  After subtracting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, the defendant's total offense level was 25.  *Id.*  Based on the assessment of 15 criminal history points, the defendant was found to have a criminal history category of VI, resulting in a Guidelines sentencing range of 110 to 120 months.  Filing No. 50, PSR at 10.

With respect to the supervised release violation in Case No. 8:07CR165, the PSR reflects that "the parties agreed that the sentence in the supervised release violation case (8:07CR165) will run concurrent with the sentence imposed in this case." Filing No. 50, PSR at 18.  Noting that the "probation officer supervising Mr. Beck has recommended 24 months imprisonment, with no supervision to follow," the PSR acknowledged that "if the Court honors the Plea Agreement, the defendant benefits by not serving any additional period of incarceration on the violation."  *Id.*  The defendant

2

was arrested on February 25, 2013 on a federal warrant and has been in custody since then.  Filing No. 16, arrest warrant returned executed (restricted); Filing No. 50, PSR at 1.  He has served just over 40 months.

At the § 2255 hearing, the parties agreed that absent the enhancement for the burglary offense, the defendant's sentencing range on the weapon charge would have been 77 to 96 months (representing a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4), plus 2 for number of weapons, plus 2 for a stolen weapon, less 3 for acceptance of responsibility, for a total offense level of 21 at criminal history category VI).

The defendant seeks relief under *Johnson v. United States*, 135 S. Ct. 2551 (2015).  In *Johnson*, the Supreme Court held that imposing an increased sentence pursuant to the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), violates due process under the Fifth Amendment.  *Johnson*, 135 S. Ct. at 2563.  The ACCA gives three definitions of "violent felony."  18 U.S.C. § 924(e)(2)(B). It refers to any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i) (the "elements clause" or "force clause").  It also covers any offense that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  The first 9 words of that subsection are called the "enumerated crimes clause," and the last 13 are called the "residual clause."  *See id.*  The Supreme Court found the residual clause unconstitutionally vague, but did not invalidate the elements clause or the enumerated crimes of the ACCA's definition of a violent felony.  *Johnson*, 135 S. Ct. at

2563.  The Guidelines definition of a crime of violence contains the same definitions. *Compare* U.S.S.G. § 4B1.2(a)(1) & (2), *with* 18 U.S.C. § 924(e)(2)(B)(i) & (ii).  The decision in *Johnson* was given retroactive effect on collateral review by the Supreme Court.  *Welch v. United States*, 136 S. Ct. 1257, 1265 (April 18, 2016).

Beck contends that he was sentenced improperly under the Guidelines career-offender provisions, arguing that his conviction for burglary no longer qualifies, post-*Johnson*, as a "crime of violence" under either the residual or the force clauses, and also does not equate to the enumerated offense of generic burglary under this court's precedent.[2]  The government has conceded that *Johnson* applies to both ACCA or Guidelines career-offender sentences pending on direct appeal, and to initial collateral attacks on ACCA-enhanced sentences.  *See* Filing No. 57, Government Brief at 1.  The government argues, however, that the *Johnson* decision is not retroactive with respect to a collateral challenge to a Guidelines-enhanced sentence under the career-offender residual clause.  *Id.* at 4.  At the hearing, the government also challenged the defendant's contention that Beck's conviction for burglary did not amount to a crime of violence, advocating use of the modified categorical approach to determine whether Beck's conviction for burglary matched the elements of the generic crime.[3]

II.   DISCUSSION

---

[2] *See, e.g., United States v. Cornejo-Lopez*, No. 15-cr-46, 2015 WL 7274060, at *7 (D. Neb. Nov. 17, 2015) (burglary does not qualify as a predicate offense under the enumerated crimes clause); *United States v. Richards*, No. 8:13CR371, 2014 WL 6686783, at *11 (D. Neb. Nov. 26, 2014) (attempted burglary does not qualify as a predicate offense under the enumerated crimes clause).

[3] As discussed *infra* at 19-22, that argument is foreclosed by the Supreme Court's decision in *Mathis v. United States*, No. 15-6092, 2016 WL 3434400, at *3 (June 23, 2016).

The court must first determine the effect of the parties' binding plea agreement on the motion.[4]   Next, the court must determine whether the *Johnson* holding is applicable to the Guidelines career-offender provision, which is identical to the ACCA provision that was invalidated in *Johnson*, and if so, whether the new substantive rule announced in *Johnson* can be retroactively applied on collateral review in a case involving a challenge to a Guidelines-enhanced sentence.   Last, the court must determine whether a conviction for burglary under Nebraska law is a crime of violence.

A.   Section 2255 Standards

Under 28 U.S.C. § 2255, a court may grant relief to a federal prisoner who moves to vacate, set aside or correct his sentence on any of the following grounds:  (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack.   28 U.S.C. § 2255(a).   Section 2255 provides a person in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of his sentence.   *See United States v. Addonizio*, 442 U.S. 178, 185 (1979).   Relief is reserved for violations of constitutional rights and for a narrow range of injuries that are outside the ambit of a direct appeal and which, if

---

[4] In the plea agreement, the defendant waived the right to contest the defendant's conviction and sentence in any post-conviction proceedings, except for "the right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime."  Filing No. 43, Plea Agreement at 9.   The government has not asserted waiver.   The court finds, however, that the defendant's challenge to his sentence fails within the exception to the waiver and the waiver cannot be enforced with respect to the defendant's present challenge.   In essence, the defendant argues that the predicate offense that forms the basis for his increased sentence is no longer a crime for that purpose.

untreated, would result in a miscarriage of justice.  *See Poor Thunder v. United States*, 810 F.2d 817, 821–22 (8th Cir. 1987).

The harmless error standard of review applies to § 2255 motions.  *United States v. Clay*, 720 F.3d 1021, 1027 n.5 (8th Cir. 2013).  Under that standard, a constitutional error does not require reversal of conviction unless the petitioner can show that the error was of such magnitude as to have a substantial and injurious effect or influence on the guilty plea or the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error" and can be relied upon by a defendant to show an effect on his substantial rights.  *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345, 1349 (2016)(involving an unpreserved error on direct appeal); *see United States v. Robinson*, 2016 WL 3407698, at *2 (8th Cir. 2016) (finding that a reasonable probability that absent the error the defendant would have received a shorter sentence, and concluding that the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings).

### B.    Rule 11(c)(1)(C) Agreement

A defendant who has entered into a binding plea agreement under Fed. R. Crim. P. 11(c)(1)(C) is eligible for a sentence reduction under limited circumstances.  *See, e.g., Hodge v. United States*, 554 F.3d 372, 374 (3d Cir. 2009); *United States v. Williams*, 158 F.3d 736, 737–40 (3d Cir. 1998) (claims attacking plea agreements are raised in § 2255 motions);  18 U.S.C. § 3582(c)(3) (a sentence of imprisonment may be

modified for a defendant who was sentenced based on a sentencing range that was subsequently lowered by the Sentencing Commission).  Under § 3582(c)(3) a defendant is eligible for a sentence reduction based on a retroactive amendment to the Guidelines only if the "agreement *expressly* uses a Guidelines sentencing range to establish the term of imprisonment, and that range is subsequently lowered by the Commission.") *Freeman v. United States*, 564 U.S. 522, 534 (2011) (plurality opinion) (Sotomayor, J., concurring in the judgment)(emphasis added); s*ee United States v. Browne*, 698 F.3d 1042, 1045 (8th Cir. 2012) (in the Eighth Circuit, Justice Sotomayor's concurring opinion in *Freeman* is controlling).[5]  The use of a Guidelines sentencing range must be "evident from the agreement itself[,]"  for example, the agreement "may call for [a] defendant to be sentenced within a particular Guidelines sentencing range," or may otherwise "make clear that the basis for [a] specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty." *Id.* at 538-39.

Otherwise, the defendant's sentence is not based on the Guidelines, but is based on the agreement.  *United States v. Bailey*, 820 F.3d 325, 329 (8th Cir. 2016) ("Strictly

---

[5] The defendant raises a § 2255 challenge, not a motion for reduction of his sentence under § 3582(c)(2), so *Freeman* is of limited applicability to the present motion.

The court notes, however, that the United States Sentencing Commission  proposed changes to the Guidelines' existing definition of a "crime of violence" in order to make the Guidelines consistent with the decision in *Johnson.* United States Sentencing Commission, Sentencing Guidelines of the United States Courts, 81 FR 4741-02, 2016 WL 305316 (F.R.) (Jan. 27, 2016).  Specifically, "the Commission determined that the residual clause at § 4B1.2 implicates many of the same concerns cited by the Supreme Court in *Johnson*, and, as a matter of policy, amends § 4B1.2(a)(2) to strike the clause." *Id.* at 4743.  The Commission also deleted "burglary of a dwelling" from the list of enumerated offenses. *Id.* at 4744.  The Commission has since adopted its proposed amendment, effective August 1, 2016.  *United States v. Pawlak*, No. 15-3566, 2016 WL 2802723, at *10 n.3 (6th Cir. May 13, 2016); *see* United States Sentencing Commission, Sentencing Guidelines for United States Courts, 81 Fed. Reg. 27262-01, 27274, 2016 WL 2344693 (May 5, 2016).

speaking, the plea agreement itself is the foundation for a sentence in the Rule 11(c)(1)(C) context. If the plea agreement "does not indicate the parties' intent to base the term of imprisonment on a particular Guidelines range subsequently lowered by the [Sentencing] Commission, then § 3582(c)(2) simply does not apply." *Freeman*, 564 U.S. at 540 n.5. The basis for relief from a sentence imposed pursuant to a binding plea agreement under a mistaken belief as to the sentence required under federal law is a motion under § 2255. *United States v. Bailey*, 777 F.3d 904, 907 (7th Cir. 2015).

Generally speaking, in the Eighth Circuit, plea agreements are viewed as contracts, requiring the parties to fulfill their obligations under that contract. *United States v. Fowler*, 445 F.3d 1035, 1038 (8th Cir. 2006); *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (en banc). "'A plea agreement is more than merely a contract between two parties, however, and must be attended by constitutional safeguards to ensure a defendant receives the performance he [or she] is due.'" *United States v. Van Thournout*, 100 F.3d 590, 594 (8th Cir. 1996) (quoting *United States v. Britt*, 917 F.2d at 353, 359 (8th Cir. 1990); *United States v. McGovern*, 822 F.2d 739, 743 (8th Cir. 1987) ("A plea agreement, however, is not simply a contract between two parties. It necessarily implicates the integrity of the criminal justice system."); *United States v. Frownfelter*, 626 F.3d 549, 554 (10th Cir. 2010) (noting that "remedial decision-making is guided not merely by contract principles, but by 'considerations of fairness and the integrity of the judicial system.'") (citation omitted). Due process concerns are implicated and can be addressed in a § 2255 motion. *Van Thournout*, 100 F.3d at 594; *see United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005) (even a plea agreement containing a waiver of the right to appeal and to file a petition under § 2255 can be

collaterally attacked in a limited number of circumstances, including challenges based upon contractual grounds such as mutual mistake or breach); *see Frownfelter*, 626 F.3d at 555; *United States v. Lewis*, 138 F.3d 840, 842 (10th Cir. 1998) (stating "the broad and flexible remedial power conferred on the district court by section 2255 . . . provide the district court with authority to vacate an entire plea agreement when a conviction that is part of the plea package is vacated").  "The determination of the appropriate remedy is typically left to the discretion of the court."  *Fowler*, 445 F.3d at 1038 (involving a breach of the plea agreement).

To the extent that § 3582(c) is at issue, the court finds the defendant's sentence was "based on" the Guidelines.  The agreement expressly provided that if the defendant were determined to be a career offender, his offense level would be determined under U.S.S.G. 4B1.1(a).  Clearly, the defendant's status as a career offender drove the agreed-upon sentence, which turned out to be the low-end of the advisory Guidelines range, augmented by a concurrent sentence for the supervised release violation.

Notwithstanding § 3582(c), the court finds that a § 2255 motion is the appropriate vehicle for the defendant's challenge to the legality of his sentence under § 2255.  The binding plea agreement does not prevent the court's consideration of the impact of the *Johnson* decision on the defendant's sentence.[6]  It is clear to the court that the parties operated under a mutual mistake in entering into the agreement.

As discussed below, *Johnson* altered the class of persons that the law punishes as career offenders and announced a new substantive rule.  Had Beck not been

---

[6] In a case involving an ACCA enhancement and a Rule 11(c)(1)(c) agreement, the government conceded that resentencing the defendant was appropriate on the defendant's § 225 *Johnson* motion. *See United States v. Seidel*, 8:09cr414 (D. Neb. June 26, 2016).

designated a career offender under the Guidelines, the circumstances of his sentencing would have been significantly different. Ordinarily, absent some unusual circumstances, the court would not accept a Rule 11(c)(1)(c) agreement for a sentence of 110 months on a felon-in-possession charge for a defendant who was not subject to a Guidelines enhancement for two drug-trafficking or violent felony offenses. The agreed-upon sentence herein was reasonable only to the extent that it reflected the Guidelines determination of a then-fair sentence in consideration of the defendant's offense and criminal history. To enforce the agreement as written, in spite of the defendant's changed status, would be a miscarriage of justice. For the reasons set forth below, the court finds the sentence imposed pursuant to the plea agreement is unlawful, and the defendant should be resentenced to the term of imprisonment he would have received without the consideration of the prior burglary conviction.

C. Constitutionality of Guidelines Residual Clause

"Since *Johnson*, federal courts have grappled with the unresolved question of whether the Guidelines' residual clause is also unconstitutionally vague." *United States v. Pawlak*, No. 15-3566, 2016 WL 2802723, *3 (6th Cir. May 13, 2016). "Whether an advisory sentencing guideline is susceptible to a vagueness challenge is an open question in this circuit." *Donnell v. United States*, No. 15-2581, 2016 WL 3383831, at *1 (8th Cir. 2016); *see United States v. Ellis*, 815 F.3d 419, 421 (8th Cir. 2016); *United States v. Taylor*, 803 F.3d 931, 932 (8th Cir. 2015) (acknowledging that the Court's "reasoning in *Wivell [v. United States*, 893 F.3d 156, 159 (8th Cir. 1990)] that the Guidelines cannot be unconstitutionally vague . . . is doubtful after *Johnson*," but leaving

10

it to the district court to decide in the first instance on remand whether the Guidelines' residual clause is unconstitutional).

Several circuits have held that the rationale expressed in *Johnson* with respect to the ACCA provision is equally applicable to the Guidelines. *See United States v. Pawlak*, No. 15-3566, 2016 WL 2802723, at *4 (finding *Johnson's* rationale applies with equal force to the Guidelines' residual clause); *United States v. Madrid*, 805 F.3d 1204, 1211 (10th Cir. 2015) (holding that *Johnson* renders the Guidelines' residual clause unconstitutionally vague); *United States v. Harbin*, 610 Fed. App'x 562 (6th Cir. 2015)(Mem.) (unpublished opinion) (finding that offenders sentenced under the residual clause of the Guidelines are "entitled to the same relief as offenders sentenced under the residual clause of the ACCA"); *United States v. Townsend*, No. 14-3652, 2015 WL 9311394, at *4 & n.14 (3d Cir. Dec. 23, 2015) (same). Other courts have accepted the government's concession that *Johnson* applies, or proceeded on the assumption that it does, and remanded for resentencing. *See, e.g., United States v. Soto-Rivera,* 811 F.3d 53, 59 (1st Cir. 2016)*; United States v. Welch,* Nos. 12–4402–CR (L), 12–5004–CR (Con), 2016 WL 536656 (2d Cir. Feb. 11, 2016) (summary order); *United States v. Benavides,* 617 Fed. App'x 790, 790 (9th Cir. 2015); *Ramirez v. United States,* 799 F.3d 845, 856 (7th Cir. 2015) (proceeding on the assumption that the Supreme Court's reasoning applies to section 4B1.2 as well); *United States v. Maldonado*, No. 12–3487–cr, 2016 WL 229833, at *3 (2d Cir. Jan. 20, 2016) (proceeding "on the assumption that the Supreme Court's reasoning with respect to the ACCA's residual clause applies to the identically worded Guideline § 4B1.2(a)(2)'s residual clause") . Only one circuit has affirmatively held that the Guidelines are not affected by *Johnson*. *United States v.*

11

*Matchett*, 802 F.3d 1185, 1193–96 (11th Cir.2015) (holding that the Guidelines are not susceptible to vagueness challenges and declining to invalidate § 4B1.2(a)(2)).[7]  The Supreme Court has recently granted certiorari on the issue of whether *Johnson* renders the Guidelines residual clause void for vagueness, such that *Johnson*-based challenges in that context are cognizable in § 2255 proceedings as well as whether *Johnson* applies retroactively to sentences enhanced under the Guidelines' residual clause. *Beckels v. United States*, No. 15-8544, 2016 WL 1029080 (June 27, 2016).

The court agrees with those courts that have either held or assumed that *Johnson* makes language in § 4B1.2(a)(2) that is identical to that in the ACCA unlawful. *See Pawlak*, No. 15-3566, 2016 WL 2802723, at *8; *Madrid*, 805 F.3d at 1211; *Townsend*, No. 14-3652, 2015 WL 9311394, at *4.  In *Johnson*, the Supreme Court held that the language—"otherwise involves conduct that presents a serious risk of physical injury to another"—was "hopelessly indeterminate" and "vague in all its applications." *Johnson*, 135 S. Ct. at 2561.  "The *Johnson* Court observed that '[t]wo features of the residual clause conspire to make it unconstitutionally vague': first, the clause 'leaves grave uncertainty about how to estimate the risk posed by a crime' by tying 'the judicial assessment of risk to a judicially imagined "ordinary case" of a crime, not to real-world facts or statutory elements'; and second, it 'leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony.'"  *Pawlak*, No. 15-3566, 2016 WL

---

[7] That decision relied on *United States v. Tichenor*, 683 F.3d 358, 364 (7th Cir. 2012) and *United States v. Wivell*, 893 F.2d 156, 160 (8th Cir. 1990)).  *See Matchett*, 802 F.3d at 1194-95.  The Eighth Circuit has acknowledged that *Wivell* is no longer good law.  *See Taylor*, 803 F.3d at 933.  *Tichenor* was decided before the Supreme Court rejected the notion that the Guidelines were merely "guideposts" that lacked the "force and effect of laws," explaining that the Guidelines "anchor both the district court's discretion and the appellate review process."  *Peugh v. United States*, 133 S. Ct. 2072, 2085-87 (2013).

2802723, at *2 (quoting *Johnson*, 135 S. Ct. at 2557-58).    Specifically, the Court concluded that the "residual clause . . . invites arbitrary enforcement by judges" and thus "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Johnson*, 135 S. Ct. at 2557.   The Guidelines are subject to constitutional challenge "notwithstanding the fact that sentencing courts possess discretion to deviate from the recommended sentencing range."   *Peugh v. United States*, 133 S. Ct. 2072, 2082 (2013) (finding "[a] retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an *ex post facto* violation.").

"[T]he identical language of the Guidelines' residual clause implicates the same constitutional concerns as the ACCA's residual clause." *Pawlak*, No. 15-3566, 2016 WL 2802723, at *8.   "[T]he void-for-vagueness doctrine derives from" the Due Process notice requirement "that the law inform the public of what conduct is prohibited and the consequences of such conduct ("ex ante notice")," rather than the separate Due Process requirement, even if the law clearly notifies the public of prohibited conduct, that the government "provide a defendant with notice of the allegations and an opportunity to respond ("adversarial notice")."   *Id.*   It is with respect to the second category that there are arguable distinctions between advisory Guidelines provisions and statutory provisions.   Cf. *Irizarry v. United States,* 128 S. Ct. 2198, 2199 (2008) (under advisory Guidelines, neither the government nor the defendant may place the same degree of reliance on the type of expectancy that gave rise to due process concerns and a special need for notice under the mandatory Guidelines).

13

Also, the prohibition against Ex Post Facto laws involved in *Peugh*, 133 S. Ct. at 2085, and the due process prohibition against vague criminal statutes involved in *Johnson*, 135 S. Ct. at 2556-57, are both concerned with fair warning and the applicable rules of law. *See Johnson*, 135 S. Ct. at 2556-2557 ("The prohibition of vagueness . . . 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law[.]'") (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)); *Peugh*, 133 S. Ct. at 2085 ("The [Ex Post Facto] Clause ensures that individuals have fair warning of applicable laws . . . ."). Just as the Constitution prohibits imposing a harsher sentence based on a guideline that has changed after the crime, *Peugh*, 133 S. Ct. at 2088, it also prohibits imposing a harsher sentence based on a guideline that is so vague that its application is both unpredictable and arbitrary. *See Johnson*, 135 S. Ct. at 2557. "Given [the] reliance on the ACCA for guidance in interpreting § 4B1.2, it stretches credulity to say that [the Court] could apply the residual clause of the Guidelines in a way that is constitutional, when courts cannot do so in the context of the ACCA." *Madrid*, 805 F.3d at 1211 (stating that "if one iteration of the clause is unconstitutionally vague, so too is the other");[8] *see also Narvaez v. United States*, 674 F.3d 621, 629 (7th Cir. 2011) (noting that the fact that the defendant's sentence fell below the applicable statutory-maximum sentence is not alone

---

[8] In fact, in *Johnson*, the Supreme Court relied on four lower court decisions that interpreted the identical language in § 4B1.2(a)(2) to demonstrate that it "has proved nearly impossible" for the lower courts to "mak[e] sense of the residual clause." *Johnson*, 135 S. Ct. at 2559-60 (analyzing *United States v. Carthorne*, 726 F.3d 503 (4th Cir. 2013), *United States v. Whitson*, 597 F.3d 1218 (11th Cir. 2010), *United States v. McDonald*, 592 F.3d 808 (7th Cir. 2010), and *United States v. Williams*, 559 F.3d 1143 (10th Cir. 2009)). The Supreme Court noted that the "most telling feature" of these decisions was "pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider" and stated "[i]nvoking so shapeless a provision to condemn someone to prison for 15 years to life does not comport with the Constitution's guarantee of due process." *Id.* at 2560.

determinative of whether a miscarriage of justice has occurred because "the imposition of the career offender status branded [the defendant ] as a malefactor deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense.").   In short, the court agrees with the rationale of the cases stating that *Johnson's* holding applies to a Guidelines-enhanced sentence.

     D.    Retroactivity[9]

The Supreme Court's "decision in *Welch* [*v. United States*, 136 S. Ct. 1257, 1265-66 (2016)*] declared unequivocally that *Johnson* was 'a substantive decision and so has retroactive effect under *Teague* in cases on collateral review.'" *In re Hubbard*, No. 15-276, 2016 WL 3181417, at *6 (4th Cir. June 8, 2016) (quoting *Welch*, 136 S. Ct. at 1265).   The court is not aware of any case that supports the proposition that a rule can be substantive in one context but procedural in another.   *See id.*   Generally, a rule that is substantive in the statutory context is substantive in the Guidelines context.   *See Reina–Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011) (holding that the decision that a burglary conviction did not meet the requirements to enhance a defendant's sentence as a career offender was a substantive rule that applied retroactively); *Narvaez*, 674 F.3d at 629 (stating that although the defendant may not

---

[9] The circuits are split on whether individuals sentenced under identical language in the Sentencing Guidelines presenting a *Johnson* claim have made a sufficient prima facie showing to warrant authorization for a second or successive petition.   *Compare In re Griffin*, No. 16-12012-J, 2016 WL 3002293, at *4(11th Cir. May 25, 2016) (denying authorization for second § 2255 petition), and *In re Arnick*, No. 16-10328, 2106 WL 3383487, *1 (5th Cir. June 17, 2016) (denying motion for leave to file a successive petition, noting that even if *Johnson* does implicate Section 4B1.2(a)(2), the Supreme Court has not addressed whether this arguably new rule of criminal procedure applies retroactively to cases on collateral review); *with In re Hubbard*, No. 15-276, 2016 WL 3181417, at *2 (granting authorization); *In re Encinias*, No. 16-8038, 2016 WL 1719323, at *2 (10th Cir. April 29, 2016) (same).   The present case involves an initial § 2255 petition that is not barred as successive.

have had an absolute right to a lower sentence—since he had been sentenced within the statutory range—he did "have an absolute right not to stand before the court as a career offender when the law does not impose that label on him.").

"New constitutional rules announced by [the Supreme] Court that place certain kinds of primary individual conduct beyond the power of the States to proscribe, as well as 'watershed' rules of criminal procedure, must be applied in all future trials, all cases pending on direct review, and all federal habeas corpus proceedings." *Danforth v. Minnesota*, 552 U.S. 264, 266 (2008). In *Welch*, the Supreme Court "noted that '[b]y striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the Armed Career Criminal Act, altering "the range of conduct or the class of persons that the [Act] punishes.""" *In re Hubbard*, No. 15-276, 2016 WL 3181417, at *6 (quoting *Welch*, 136 S. Ct. at 1265). "*Johnson* is not a procedural decision." *Welch*, 136 S. Ct. at 1265 (internal citations omitted). "*Johnson* had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the Armed Career Criminal Act." *Id.*

The court finds that the *Welch* rationale applies equally to the Guidelines enhancement. *See Hubbard*, No. 15-276, 2016 WL 3181417, at *7 (authorizing successive § 2255 challenge to 18 U.S.C. § 16(b), as incorporated into the Sentencing Guidelines, "because it is for the district court to determine whether the new rule [announced in Johnson] extends to the movant's case, not for this court in this proceeding"). *Johnson* is a substantive rule whether a defendant is challenging an ACCA enhancement, a mandatory Guidelines enhancement, or an advisory Guidelines enhancement. *See id.* Striking down the identically worded and interchangeably

16

interpreted residual clause in the Sentencing Guidelines would alter the range of conduct or the class of persons that the Sentencing Guidelines punishes—"[t]hat is, the 'substantive reach' of the Sentencing Guidelines would be altered just as much as was true for the ACCA." *Id.* If *Johnson* invalidates the Guidelines provision, "some crimes will no longer fit the Sentencing Guidelines' definition of a crime of violence and will therefore be incapable of resulting in a career-offender sentencing enhancement." *Id.* (quoting *Frazer v. South Carolina,* 430 F.3d 696, 704 n.4 (4th Cir. 2005)).

The fact that application of the Guidelines enhancement does not alter a statutory sentencing range is of no consequence because "although available sentencing ranges are technically controlled by statute, the Sentencing Guidelines hardly represent a mere suggestion to courts about the proper sentences defendants should receive." *Hubbard*, No. 15-276, 2016 WL 3181417, *7. "'The federal system adopts procedural measures intended to make the Sentencing Guidelines the lodestone of sentencing.'" *Id.* (quoting *Peugh,* 133 S. Ct. at 2084, 2088 (expressly describing the Sentencing Guidelines as "the substantive 'formula' used to calculate the applicable sentencing range"); *see also Molina–Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016) (stating "[t]he Guidelines' central role in sentencing means that an error related to the Guidelines can be particularly serious" and noting the real and pervasive effect the Guidelines have on sentencing). "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error" and can be relied upon by a defendant to show an effect on his substantial rights. *Molina-Martinez,* 136 S. Ct.

at 1345, 1349. "Post-*Johnson* and *Peugh*, the fact that the Guidelines are not mandatory is a distinction without a difference." *Pawlak*, No. 15-3566, 2016 WL 2802723, at *4.

Courts of Appeals have consistently held that other new rules that narrow the ACCA's residual clause apply retroactively in Guidelines cases. *See United States v. Doe*, 810 F.3d 132, 154 & n.13 (3d Cir. 2015) (holding that *Begay v. United States*, 553 U.S. 137 (2008),[10] applies retroactively in Guidelines cases and stating "[u]nder *Teague*, either a rule is retroactive or it is not"); *Narvaez,* 674 F.3d at 625-26 (holding that because *Begay* and *Chambers v. United States*, 555 U.S. 122 (2009)[11] announced substantive rules, those rules apply retroactively in Guidelines cases); *Brown v. Caraway*, 719 F.3d 583, 594-95 (7th Cir. 2013) (postconviction clarification in the law rendering a sentence unlawful is exception to rule that sentencing errors are not cognizable on collateral review); *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1189 (9th Cir. 2011) (holding that because its decision limiting the definition of burglary under the ACCA was substantive, it applies retroactively in Guidelines cases); *Rozier v. United States*, 701 F.3d 681 (11th Cir. 2012) ("The government concedes, and we take it as a given, that the Supreme Court's" decision interpreting the ACCA's elements clause "is retroactively applicable" in Guidelines cases.).

---

[10] In *Begay*, the Supreme Court found that New Mexico's crime of "driving under the influence" fell outside the scope of the ACCA's clause. *Begay*, 553 U.S. at 148.

[11] The Supreme Court found that the Illinois failure-to-report offense did not have as element the use, attempted use, or threatened use of physical force, and did not involve conduct presenting a serious potential risk of physical injury to another, so as not to qualify as "violent felony" under the ACCA. *Chambers v. United States*, 555 U.S. at 130.

The court finds that *Johnson* announces a substantive rule that is retroactive to cases on collateral review.  Under *Johnson*, the defendant's prior state court conviction for burglary no longer constitutes a "crime of violence" for purposes of the Guidelines' residual clause.  *Johnson* substantively changes the conduct by which federal courts may enhance the sentence of a defendant under the Guidelines.  Thus, *Johnson* does not "regulate only the manner of determining the defendant's culpability" like a procedural rule would. *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004) (a rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes—in contrast, rules that regulate only the manner of determining the defendant's culpability are procedural).   Despite the fact that they are only advisory, the Guidelines remain "the lodestone of sentencing." *Peugh*, 133 S. Ct. at 2084. In Beck's individualized circumstance, the Guidelines were not advisory but were effectively mandatory by operation of the binding plea agreement.  The binding nature of the plea agreement makes Beck's sentencing effectively indistinguishable from that at issue in *Johnson.*   Beck was sentenced using an unconstitutional enhancement.

### E.   Burglary under Nebraska Law as a Predicate Offense

The ACCA and the Guidelines define the term "violent felony" to include any felony, whether state or federal, that "is burglary, arson, or extortion."   18 U.S.C. § 924(e)(2)(B)(ii); U.S.S.G. 4B1.2(a)(1).   "In listing those crimes, [the Supreme Court has] held, Congress referred only to their usual or (in [the Court's] terminology) generic versions—not to all variants of the offenses." *Mathis v. United States*, No. 15-6092, 2016 WL 3434400, at *3 (June 23, 2016).   "That means as to burglary—the offense

relevant in this case—that Congress meant a crime 'contain[ing] the following elements: an unlawful or unprivileged entry into . . . a building or other structure, with intent to commit a crime.'"  *Id.*  (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)).

To determine whether a prior conviction is for generic burglary (or other listed crime), courts apply what is known as the categorical approach, focusing solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case.  *Id.*  "A crime counts as "burglary" under the Act if its elements are the same as, or narrower than, those of the generic offense."  *Id.*  "But if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA 'burglary'—even if the defendant's actual conduct (i.e., the facts of the crime) fits within the generic offense's boundaries."  *Id.*

"The comparison of elements that the categorical approach requires is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime"—the court lines up that crime's elements alongside those of the generic offense and sees if they match.[12]  *Id.*  The key "is elements, not facts."  *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).

---

[12] "Some statutes, however, have a more complicated (sometimes called "divisible") structure, making the comparison of elements harder."  *Mathis*, 2106 WL 3434400, at *4 (noting that a single statute may list elements in the alternative, and thereby define multiple crimes).  With reference to those statutes, courts need a way to figure out which of the alternative elements listed were integral to the conviction at issue.  *See id.*  The Supreme Court "approved the 'modified categorical approach' for use with statutes having multiple alternative elements."  *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 26 (2005).  Under the modified categorical approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of."  *Id.*  "The court can then compare that crime, as the categorical approach commands, with the relevant generic offense."  *Id.*  If an alternatively phrased law does not list multiple elements disjunctively, but instead "enumerates various factual means of committing a single element[,]"—i.e., "merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense," the modified categorical approach is not appropriate.  *Id.* at *4, *8.

"Under Nebraska law, 'a person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value.'" *United States v. Richards*, No. 8:13CR371, 2014 WL 6686783, at *11 (D. Neb. Nov. 26, 2014) (quoting Neb. Rev. Stat. § 28–507). "The elements of burglary are contained in the statute." *Id.* Like the Iowa burglary statute at issue in *Mathis*, the Nebraska statute "itemize[s] the various places that crime could occur as disjunctive factual scenarios rather than separate elements." *Mathis*, No. 15-6092, 2016 WL 3434400, at *4. Such alternative means of committing an offense are "amplifying but legally extraneous circumstances"—not elements integral to a conviction, which would have to be found by a jury or admitted by a defendant. *See Descamps*, 133 S. Ct. at 2288; *see Mathis*, No. 15-6092, 2016 WL 3434400, at *4 (noting that "a jury need not make any specific findings (or a defendant admissions)" as to the place the crime occurred).

Accordingly, "the elements required to prove a Nebraska burglary offense are not the same as, nor are they narrower than, the elements required to prove a generic burglary." *Richards*, No. 8:13CR371, 2014 WL 6686783, at *15; *see Mathis*, No. 15-6092, 2016 WL 3434400, at *5 (holding that a similar Iowa statute "defines one crime, with one set of elements, broader than generic burglary—while specifying multiple means of fulfilling its locational element, some but not all of which (i.e., buildings and other structures, but not vehicles) satisfy the generic definition"). The Nebraska statute proscribes a broader range of conduct than the generic burglary offense. *Richards*, No. 8:13CR371, 2014 WL 6686783, at *14.

21

> The generic offense is limited to "breaking and entering" a "structure." The Nebraska statute criminalizes breaking and entering more than just structures, but includes real estate, which consists of buildings and land. Nebraska caselaw interprets the "breaking and entering" element to cover merely opening a door or a gate. A conviction in Nebraska could be for entry onto land via opening a gate. Nebraska defines burglary so broadly as to include conduct such as trespassing on undeveloped land with intent to commit a crime as long as there is a predicate breaking.

*Id.*

The Supreme Court has "often held, and in no uncertain terms, that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense." *Id.* at *6. Like the listed premises in Iowa's burglary law, the Nebraska burglary statute's listing of real estate or improvements thereon "are 'alternative method[s]' of committing one offense," in relation to the element of place, "so that a jury need not agree whether the burgled location was a building, other structure, or vehicle." *Mathis*, No. 15-6092, 2016 WL 3434400, at *10. Under *Mathis*, if listed alternatives in a statute are means rather than elements, the sentencing court "has no call to decide which of the statutory alternatives was at issue in the earlier prosecution . . . the court may ask only whether the elements of the state crime and generic offense make the requisite match." *Id.*

    F.    Resentencing

The court finds the defendant is entitled to relief under § 2255 because, in light of *Johnson* and *Mathis,* he is serving an unauthorized sentence. Under *Johnson*, the underlying burglary cannot qualify as a violent felony under the now-invalidated residual clause of the Guidelines career-offender enhancement provision. Under the categorical

approach mandated in *Mathis*, the Nebraska crime of burglary does not qualify as the enumerated crime of generic burglary.

In resentencing a defendant who prevails on a § 2255 motion, the district court generally performs a fresh review of the 18 U.S.C. § 3553(a) factors.  *See United States v. Estrada*, 777 F.3d 1318, 1323 (11th Cir. 2015) (per curiam) (ordering that, on remand for resentencing, "the district court shall consider all appropriate 18 U.S.C. § 3553(a) factors in determining a reasonable sentence"); *see United States v. Kirk, 636 Fed. App'x 548, 551 (11th Cir. 2016)* (stating that on remand, the district court must first recalculate the defendant's advisory guidelines range and then apply the § 3553(a) factors).  The court will accordingly schedule another hearing to address the § 3553(a) factors.

IT IS ORDERED that:

1.      The defendant's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 (Filing No. 55) is granted;

2.      A hearing before the undersigned is scheduled for July 29, 2016 at 3:30 p.m. in Courtroom No. 3, Roman L. Hruska Federal Courthouse, 111 South 18th Plaza, Omaha, Nebraska.

DATED this 6th day of July, 2016.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge